NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANTHONY SALAZAR,**

*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**

*Respondent*

---

2026-1069

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-15-0660-B-1.

---

Decided: August 3, 2026

---

ANTHONY SALAZAR, Pico Rivera, CA, pro se.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before PROST, HUGHES, and STOLL, *Circuit Judges.*

PER CURIAM.

Anthony Salazar petitions for review of a decision by the Merit Systems Protection Board denying corrective action under the Whistleblower Protection Act. Because we conclude that substantial evidence supports the Board's determination that the agency would have taken the same personnel actions against Mr. Salazar absent his protected whistleblowing activity, we affirm.

I

A

Mr. Salazar was employed by the Department of Veterans Affairs as a Motor Vehicle Operator (MVO) Supervisor in the agency's Greater Los Angeles Healthcare System. Mr. Salazar temporarily assumed the duties of his supervisor, Chief of Transportation Glenda Davidson, after her medical retirement in November 2012 until the position was filled in July 2014. During that time, Mr. Salazar managed roughly 450 government vehicles and the associated fleet card (credit card) for each vehicle. While serving as Acting Chief of Transportation, Mr. Salazar reported to the agency's Chief of Engineering Service, Robert Benkeser.

In the fall of 2013, issues came to light with the management and oversight of vehicles and fleet cards in the Community Care Homeless Program. On October 10, 2013, Mr. Salazar emailed Mr. Benkeser, reporting "major issues" with the fleet and detailing immediate corrective steps already underway. S.A. 144.[1] On October 24, 2013, Mr. Salazar sent a second email, expressing urgency and providing additional updates, including missing vehicles and suspected fleet card fraud. S.A. 152. On January 10,

---

[1]    S.A. refers to Mr. Salazar's separately filed appendix. ECF No. 8. SAppx refers to the supplemental appendix included at the end of the Respondent's Informal Brief. ECF No. 9.

2014, the Administrative Investigative Board (AIB) was convened to investigate the agency's management of the fleet. The AIB issued a report on March 6, 2014, finding that Engineering Service failed to properly manage the fleet. The AIB recommended various remedial actions and issued a letter of counseling to Mr. Benkeser as Chief of Engineering Service.

After the AIB investigation and report, Mr. Benkeser announced revised performance standards applicable to Mr. Salazar's MVO Supervisor position effective June 2014. Whereas the prior standards were more generalized, the revised standards contained details outlining specific duties and permissible error rates. *Compare* S.A. 150–51, *with* SAppx 107–10. Around this same time, in March 2014, Mr. Salazar was informed of a fleet management training opportunity and requested to take part. Mr. Benkeser declined his request, explaining that, until more departmental changes were implemented based on the AIB investigation, it was too premature "to take full advantage of the training." S.A. 175. Mr. Salazar was ultimately approved for and underwent the training in September 2014.

On September 17, 2014, Mr. Benkeser informed Mr. Salazar that his performance under the new standards was unsatisfactory, and he was placed on a Performance Improvement Plan (PIP). *See* S.A. 178–84; SAppx 103–06. Under the PIP, Mr. Salazar had ninety days to meet the "fully successful" standards or face demotion or removal. S.A. 178. He failed to do so, and the agency removed Mr. Salazar effective February 4, 2015.

B

On June 29, 2015, Mr. Salazar, then represented by counsel, filed an individual right of action appeal with the Merit Systems Protection Board seeking corrective action under the Whistleblower Protection Act (WPA). Mr. Salazar alleged that the agency took four prohibited personnel

actions against him in retaliation for his October 2013 emails: (1) denying his requested training, (2) changing the performance standards for his MVO Supervisor position, (3) placing him on a PIP, and (4) removing him.

Mr. Salazar's request for corrective action was initially denied on the basis that he had failed to prove that his October 2013 emails qualified as protected disclosures under the WPA. On review, the Board disagreed, concluding that he had established a prima facie case of whistleblower retaliation and remanding for an assessment of the agency's affirmative defense. *Salazar v. Dep't of Veterans Affs.*, No. SF-1221-15-0660-W-1, 2022 WL 17661583, at *6–10 (M.S.P.B. Dec. 13, 2022) (*Remand Order*). Specifically, the Board instructed the administrative judge to "giv[e] weight" to certain evidence and reassess the factors set out in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999),[2] to determine whether the agency had proven "by clear and convincing evidence that it would have taken the personnel actions in the absence of [Mr. Salazar's] whistleblowing." *Remand Order*, at *9–10.

C

On remand, the administrative judge assessed each of the *Carr* factors and concluded the agency met its burden. *Salazar v. Dep't of Veterans Affs.*, No. SF-1221-15-0660-

---

[2]    In determining whether the agency has met its burden, the administrative judge considers all relevant factors, including those set out in *Carr*. These factors consider "the strength of the agency's evidence in support of its personnel action," "the existence and strength of any motive to retaliate" by agency officials involved in the decision, and "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr*, 185 F.3d at 1323.

B-1, 2024 MSPB LEXIS 1413, at \*82 (Mar. 15, 2024) (*Decision*). For each personnel action, the administrative judge found that: (1) the agency's evidence in support was "relatively strong," *e.g.*, *id.* at \*12; (2) there was a motive to retaliate but "it was not strong," *e.g.*, *id.* at \*25; and (3) the minimal information on whether similar actions were taken with non-whistleblowers was "neutral or at most cutting ever so slightly against the agency," *e.g.*, *id.* at \*42. The administrative judge therefore denied Mr. Salazar's request for corrective action. This decision became final on September 30, 2025.

Mr. Salazar, now proceeding pro se, timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We set aside a Board decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The petitioner has the burden of establishing reversible error in the Board's decision. *Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020). We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1322 (Fed. Cir. 2021). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). Credibility determinations, however, are "virtually unreviewable" on appeal. *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986).

## III

Liberally construing Mr. Salazar's briefing on appeal, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Mr. Salazar advances two categories of arguments. First, that the administrative judge failed to consider certain relevant facts,

resulting in a flawed weighing of the *Carr* factors. Second, that the administrative judge exhibited bias that tainted the proceedings.

## A

### 1

We begin with Mr. Salazar's arguments as they relate to the administrative judge's analysis of the first *Carr* factor, which considers the strength of the agency's reasons for taking the challenged personnel practices. According to Mr. Salazar, the agency's stated reasons for the personnel actions all stemmed from the AIB investigation, which, in turn, was prompted by his disclosures. Thus, he argues, the agency's asserted non-retaliatory justifications were not truly independent of his protected disclosures. He contends that the administrative judge's contrary finding—that his disclosures did not cause the AIB investigation—led the administrative judge to erroneously weigh this factor strongly in the agency's favor. We disagree.

Throughout the proceedings, a factual dispute existed as to whether the fleet issues were first brought to light by Mr. Salazar's 2013 emails or if agency officials were already aware to some degree. The administrative judge found the latter. He credited testimony that agency officials were already aware of the fleet issues and that the AIB investigation did not occur because of Mr. Salazar's emails. *See Decision*, 2024 MSPB LEXIS 1413, at \*32 (finding Mr. Benkeser's testimony denying that the AIB inquiry resulted from Mr. Salazar's disclosures to be "earnest, forthright, plausible, and ultimately believable" and corroborated by other credible testimony and evidence). The administrative judge also recognized a meaningful difference between Mr. Benkeser holding Mr. Salazar partially responsible for the AIB's letter of counseling because he poorly managed fleet operations while serving as Chief of Transportation and holding him responsible because his disclosures triggered the AIB reprimand. *Id.* at \*36–41.

We find that the administrative judge's findings are supported by substantial evidence, including evidence that Mr. Salazar did not challenge. *See id.* at \*66–67 (noting Mr. Salazar did not challenge or dispute several "identified failures in other sub-elements of his critical job elements"); *see also id.* at \*76–79 (stating Mr. Salazar's concession that he failed his PIP was, alone, sufficient to prove the charge underlying Mr. Salazar's removal). Several witnesses testified that Mr. Salazar's disclosures were not the cause of the AIB investigation. The administrative judge thoroughly explained why each witness was or was not credible, noting consistency with the record and assessing demeanor. *See, e.g., id.* at \*31–34. The same is true of the administrative judge's findings on the agency's non-retaliatory evidence in support of each personnel action—he found that the overwhelming evidence and testimony in support of the actions were, on balance, "compelling" and corroborated, and thus strongly supported the personnel actions. *See, e.g., id.* at \*48–50. And the strength of the agency's evidence was bolstered by the uncompelling or incomplete nature of Mr. Salazar's arguments against the agency's evidence. *See id.* at \*58 ("Benkeser's reasoning appeared grounded in legitimacy, and I find the appellant's contentions otherwise unavailing."). So to the extent that Mr. Salazar asks us to discredit witness testimony and "reweigh the evidence on appeal," it is not our place to do so. *See, e.g., McIntosh v. Dep't of Def.*, 53 F.4th 630, 643 (Fed. Cir. 2022); *Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997) (explaining that this court will not disturb credibility determinations unless "inherently improbable or discredited by undisputed fact"). We decline to disturb the administrative judge's findings on this factor.

2

We next consider Mr. Salazar's arguments implicating *Carr* factor two, which assesses the existence and strength of any retaliatory motive. In the *Remand Order*, the Board

instructed the administrative judge to assess the *Carr* factors, "giving weight to [Mr. Benkeser's] motive to retaliate, as he testified that 'it didn't make [Mr. Benkeser's] day' that he received the letter of counseling . . . , and responded in the affirmative to the question of whether he held [Mr. Salazar] partially responsible for the letter." *Remand Order*, 2022 WL 17661583, at \*10 (citation omitted). Mr. Salazar argues that this statement "confirm[s Mr. Benkeser's] motive to retaliate," and that the Board confirmed as much, but that the administrative judge failed to consider this. Pet. Br. 30–31. We are unconvinced.

It is clear from the *Decision* that the administrative judge considered Mr. Benkeser's testimony. In fact, the administrative judge analyzed the exact testimony Mr. Salazar believes was ignored and found it *did* evince a motive to retaliate. *See Decision*, 2024 MSPB LEXIS 1413, at \*25–31. But the administrative judge correctly continued the analysis, contrary to Mr. Salazar's apparent belief that it should have ended there. *See Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1366 (Fed. Cir. 2019) ("[T]he [administrative judge] cannot ignore record evidence relevant to the existence and *strength* of any motive to retaliate . . . ." (emphasis added)). The administrative judge appropriately considered other record evidence, including testimony from witnesses he deemed credible, to discern the *strength* of the agency's motive to retaliate. *See Decision*, 2024 MSPB LEXIS 1413, at \*31–41. And after considering the record, the administrative judge concluded that, while a motive exists, it was not strong, explaining his reasoning and evidentiary bases in detail. *Id.* We find no error in the administrative judge's analysis, which is supported by substantial evidence.[3]

---

[3]   Mr. Salazar also argues the administrative judge committed legal error, or acted arbitrarily and capriciously, by minimizing Mr. Benkeser's alleged retaliatory motive.

3

We finally turn to Mr. Salazar's argument that *Carr* factor three, which considers evidence that the agency treated similarly situated non-whistleblowers the same way, should have weighed heavily against the agency. Mr. Salazar argues that the administrative judge ignored relevant evidence—namely, Mr. Salazar's suggested comparator, Ms. Davidson. And Mr. Salazar suggests that because he provided a comparator, and the agency did not, this factor should have cut against the agency. Neither argument is persuasive.

As an initial matter, we note that the administrative judge's failure to discuss particular contentions in a case does not mean that they did not consider those contentions in reaching their decision. *See Lowder v. Dep't of Homeland Sec.*, 504 F.3d 1378, 1383 (Fed. Cir. 2007) (collecting cases); *see also Hartman v. Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007) ("That the court did not specifically mention the [argument] in its opinion forms no basis for an assumption that it did not consider [it] . . . ." (alterations and omission in original)). Accordingly, we will not assume that the administrative judge ignored Mr. Salazar's suggested comparator.

Separately, we are not persuaded by Mr. Salazar's argument that the agency's failure to suggest any comparator necessarily warrants weighing this factor heavily against the agency. The administrative judge acknowledged that the agency did not produce detailed evidence of any comparators: the only evidence was uncorroborated testimony that the same personnel actions were taken with other, un-

We see no such error. *See Smith*, 930 F.3d at 1366 (recognizing analysis includes consideration of entire record to determine strength of retaliatory motive).

identified employees at unidentified times. *See, e.g., Decision*, 2024 MSPB LEXIS 1413, at *61. As such, the administrative judge found that this factor did not favor the agency, explaining it was neutral or "cut[ ] ever so slightly against the agency." *See, e.g., id.* So to the extent that Mr. Salazar wishes for us to increase the weight of this factor to be "strongly" against the agency, it again is not our role to reweigh the evidence on appeal. *McIntosh*, 53 F.4th at 643; *Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022).

\* \* \*

Substantial evidence supports the administrative judge's conclusion that the agency met its burden to show the personnel actions would have occurred absent Mr. Salazar's disclosures, especially when "considering the evidence in the aggregate, including the strength of *Carr* factor one." *Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1020 (Fed. Cir. 2019).

B

Finally, Mr. Salazar alleges that the administrative judge was biased against him, and that this bias "tainted" the *Decision*. Pet. Br. 25. Mr. Salazar cites two statements as evidence of this bias. First, the administrative judge's statement that Mr. Salazar was "painting himself as [a] helpless rube." *Decision*, 2024 MSPB LEXIS 1413, at *37 n.12. Mr. Salazar emphasizes that this was "the [administrative judge's] personal view" because the statement began with "to my mind," suggesting that this alone supports a finding of bias. Reply Br. 17. And second, the administrative judge's suggestion that a "cynic might say the appellant made disclosures preemptively to cover his own neglect or inefficacy, then doubled-down as the accountability check came due." *Decision*, 2024 MSPB LEXIS 1413, at *38. Mr. Salazar argues that the administrative judge's

alleged bias "harmed his right to a fair and impartial hearing," and he asks that we order that a new administrative judge adjudicate any future proceedings. Pet. Br. 10.

Mr. Salazar fails to meet the high standard required to establish bias. Not all comments critical of parties or their cases necessarily constitute impermissible bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). Thus, the party alleging bias has the burden of showing the challenged conduct or statements "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1362 (Fed. Cir. 2002) (quoting *Liteky*, 510 U.S. at 555). Having reviewed the *Decision*, we disagree that the administrative judge's statements demonstrate impermissible bias. Rather, the statements merely reflect the administrative judge's candid, independent judgment of Mr. Salazar's demeanor, credibility, and portrayal of events and his role in those events. Judges necessarily form and express opinions as proceedings unfold, and the mere existence or expression of those opinions does not establish impermissible bias. *See Liteky*, 510 U.S. at 555. So although the administrative judge's statements were critical of Mr. Salazar, they do not demonstrate that the administrative judge was unable to adjudicate the matter impartially.

## IV

We have considered Mr. Salazar's remaining arguments and find them unpersuasive. For these reasons, we affirm.

## **AFFIRMED**

COSTS

No costs.